**[J-18-2020] [Lead Opinion - Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF WILLIAM K. MCALEER, DECEASED | : | No. 6 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered August 9, |
| APPEAL OF: WILLIAM MCALEER | : | 2018 at No. 932 WDA 2017, |
| | : | quashing the appeal from the Order |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered May 30, |
| | : | 2017 at No. 0334 of 2014 |
| | : | |
| | : | ARGUED:  May 27, 2020 |

## CONCURRING OPINION AND OPINION SUPPORTING REVERSAL

**JUSTICE DONOHUE**                                        **DECIDED: April 7, 2021**

We join in Parts I and II(A) of the opinion supporting affirmance, as we agree with

the determination that the collateral order doctrine supports a review of this appeal.[1]

We do not join in Parts II(B) and II(C), as we would not adopt the "fiduciary

exception" to the attorney-client privilege.  In his opinion supporting affirmance, Justice

Wecht recognizes the importance of the attorney-client privilege, its status as one of the

most ancient privileges recognized in law, and its indispensable role in the furtherance of

the administration of justice.  Wecht Op. at 12.  Nevertheless, Justice Wecht would adopt

a broad rule, sometimes referred to as the "fiduciary exception," that abolishes the

---

[1]  Justice Mundy joins in this Concurring Opinion and Opinion Supporting Reversal. Justice Saylor has also filed an opinion supporting reversal.  As three of the six participating Justices support reversal of the Superior Court's principal holding, that court's alternative holding is affirmed solely by operation of law.

privilege (and the work-product doctrine) between a trustee and counsel retained to advise him in all instances[2] unless the trustee personally pays counsel's fees. In our view, the abolition of the privilege is ill-advised because it ignores the sanctity of the roles that the attorney-client privilege and work-product doctrine play, including in the context of a trustee's retention of counsel to provide legal advice regarding trust administration. Justice Wecht's proposed adoption of the fiduciary exception, which has been rejected by the vast majority of our sister states, fails to give due consideration to the complexities that arise in the context of the administration of trusts and the resulting degradation of multiple fast-held principles of trust law that are likely to result. As a result, we respectfully disagree and cannot join these portions of his opinion supporting affirmance.

Justice Wecht begins by undertaking an extensive review of how our sister states have addressed the fiduciary exception for trustees, concluding that most other jurisdictions have rejected its adoption. *See* Wecht Op. at 19–24. He then, however, reaches the opposite conclusion, namely a bright-line rule precluding a trustee's ability to

---

[2] We question whether this case is an appropriate vehicle for this Court to determine the scope of the attorney-client privilege and work-product doctrine existing between a trustee and her counsel. The record in this case is devoid of any facts that actually define the underlying dispute, although it is clear that the trust has been involved in continuing litigation. This insufficiency in the record is relevant because a number of states have adopted section 82 of the Restatement (Third) of Trusts, which protects confidential communications between trustee and counsel when the trustee seeks advice "in the course, or in anticipation, of litigation" (e.g., for surcharge or removal), but does not do so when the communications seek advice for the purpose of trust administration. RESTATEMENT (THIRD) OF TRUSTS § 82, cmt. f (2007). Here, there is no indication that the work product that the beneficiaries seek was created for the purpose of advice regarding trust administration or, alternatively, in connection with, or in anticipation of, litigation. The Appellant failed to preserve for appeal a limited review of an exception for advice given in "anticipation of litigation" and thus framed the question as whether there is a categorical fiduciary exception in all circumstances (which Justice Wecht answers in the affirmative). If this dispute involves advice sought in anticipation of litigation and the issue had been appropriately framed, we would avoid deciding the broader issue.

assert disclosure privileges upon any request by a beneficiary. He does so based upon a single case decided in 2002 by the Allegheny County Court of Common Pleas, *Follansbee v. Gerlach*, 56 Pa. D.&C. 4th 483, 2002 WL 31425995 (C.C.P. Allegheny 2002). In *Follansbee,* the trial court overruled a trustee's objections on the grounds of attorney-client privilege to a subpoena issued by a trust beneficiary seeking, inter alia, documents containing communications between a trustee and counsel. In so doing, the trial court relied primarily upon Section 173 of the Restatement (Second) of Trusts, which provides as follows:

> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

RESTATEMENT (SECOND) OF TRUSTS § 173 (1959). The trial court then cited to Comment b to Section 173, which provides that a trustee may assert a claim of privilege only if he obtained an opinion from counsel "at his own expense and for his own protection."

> *What need not be communicated.* The trustee is privileged to refrain from communicating to the beneficiary information acquired by the trustee at his own expense and for his own protection. Thus, he is privileged to refrain from communicating to the beneficiary opinions of counsel obtained by him at his own expense and for his own protection.

*Id.* cmt. b. The court in *Follansbee* stated that this Court had adopted these two provisions, i.e., both Section 173 and its Comment b, in our decision in *Estate of Rosenblum*, 328 A.2d 158 (Pa. 1974). *Follansbee*, 56 Pa. D.&C. 4th at 483. In *Rosenblum*, we indicated, in reference to Section 173, only that "[t]his section is declaratory of the common law of Pennsylvania." *Id.* at 165.

Justice Wecht agrees with *Follansbee*'s recitation of its view of *Rosenblum*, indicating that "[b]y its plain terms, the Second Restatement provides that trustees may avoid disclosure of legal opinions so long as they personally cover their own legal expenses." Wecht Op. at 27. Justice Wecht further indicates that "[m]ore than half-a-century later, that remains our understanding of the common-law confines of the attorney-client privilege in disputes between fiduciaries and beneficiaries. *Id.* at 27-28. According to Justice Wecht, Section 173 and its Comment b, taken together, hold that the source of the funds used to compensate counsel is "dispositive of questions regarding disclosure." *Id.* at 28. Justice Wecht thus contends that he is "reaffirm[ing] the core holding in *Rosenblum*." *Id.*

Justice Wecht's reliance upon *Follansbee* is misplaced for the proposition that it is an expression of this Court's understanding of the attorney-client privilege between trustees and beneficiaries. Contrary to the *Follansbee* court's representation, this Court in *Rosenblum* did **not** adopt Comment b to Section 173 or announce any requirement that a trustee may assert a claim of privilege only if he personally pays the bills of his counsel. To the contrary, *Rosenblum* did not even address a claim of privilege by a trustee. Instead, this Court reversed a ruling of a common pleas court allowing a beneficiary to inspect only those books, documents, correspondence, and other papers discoverable under the rules of civil procedure governing discovery. *Rosenblum*, 328 A.2d at 165. We ruled that where a request is made in good faith, the beneficiary is entitled to inspect "documents in the hands of the trustee pertaining to administration of the trust" because access is governed by Section 173 of the Restatement (Second) of Trusts rather than the rules of civil procedure governing discovery. *Id.* We stated:

> But unlike an ordinary party to an adversary judicial proceeding, a trust beneficiary is not obliged to show that the requirements of rules 4007 and 4009 have been satisfied in order to obtain access to records in the possession of his trustee. The right of access to trust records is an essential part of a beneficiary's right to complete information concerning the administration of the trust. This right is recognized in section 173 of the Restatement (Second) of Trusts (1959).

*Id.* at 164.

In *Rosenblum,* the beneficiaries requested all of the trust's documents, but the trustee refused to comply on the basis that the request was overbroad. The trial court agreed, limiting the production to those document that the beneficiaries could demonstrate were relevant to an objection that the beneficiaries intended to file. **There is no indication that the trustee asserted any claims of privilege and the Court did not adopt, or even consider, the adoption of a fiduciary exception to the privilege.** In reversing the trial court's discovery ruling, we made no reference to Comment b to Section 173 and did not hold that the production of documents in any respect depends upon who paid counsel's fees (even if assuming the production contained any privileged communications).

As a result, contrary to the trial court's decision in *Follansbee* and Justice Wecht's opinion supporting affirmance in this case, in *Rosenblum* this Court did not adopt Comment b to Section 173 or the fiduciary exception set forth therein. In fact, in *Pittsburgh History and Landmarks Foundation v. Ziegler*, 200 A.3d 58 (Pa. 2019), this Court specifically noted that we have never addressed the applicability of the fiduciary exception. 200 A.3d at 61 n.2. Thus, we are deciding an issue of first impression that runs contrary to the trend in our sister states based on a common pleas court decision that misinterpreted the state of the law at the time it was decided. Moreover, *Follansbee*

relied on principles stated in a 1959 formulation of the Restatement of Trusts that no longer exists in the current Restatement. Section 82 of the RESTATEMENT (THIRD) OF TRUSTS, published in 2006, contains no analogue to Comment b in the prior Section 173. Moreover, the Comment to Section 813 of the Uniform Trust Code now provides in relevant part that:

> The drafters of this Code decided to leave open for further consideration by the courts the extent to which a trustee may claim attorney-client privilege against a beneficiary seeking discovery of attorney-client communications between the trustee and the trustee's attorney.

*See UNIF.* TRUST CODE § 813, cmt.

Justice Wecht's position that a trustee may assert a claim of privilege only if counsel's fees are not paid out of the corpus of the trust, is not based upon any prior Pennsylvania law. In addition to the unsupported reliance on *Rosenblum*, the *Follansbee* court also relied upon a Delaware case, *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 711-12 (Del. Ch. 1976),[3] which had adopted the fiduciary exception. In

---

[3] *Riggs* is no longer the law in Delaware, as the fiduciary exception was abolished by statute in 2007, when the Delaware legislature enacted Section 3333(b) to Title 12 of the Delaware Code, which provides that

> [A] fiduciary may retain counsel in connection with any matter that is or that might reasonably be believed to be one that will become the subject of or related to a claim against the fiduciary, and the payment of counsel fees and related expenses from the fund with respect to which the fiduciary acts as such shall not cause the fiduciary to waive or to be deemed to have waived any right or privilege including, without limitation, the attorney -client privilege even if the communications with counsel had the effect of guiding the fiduciary in the performance of fiduciary duties.

12 Del. Code Ann. § 3333(b).

*Riggs*, the Delaware court indicated that because the trustee paid the attorney's fees "out of the trust assets," this was "a significant factor, not only in weighing ultimately whether the beneficiaries ought to have access to the document, but also [because] it is in itself a strong indication of precisely who the real clients were." *Id.* at 711-12 ("[T]he ultimate or real clients were the beneficiaries of the trust, and the trustee, ... in his capacity as a fiduciary, was, or at least should have been, acting only on behalf of the beneficiaries in administering the trust.").

We challenge two principles expressed in *Riggs* and embraced by Justice Wecht as being unsupported by Pennsylvania law. The first is that the party who pays the attorney's fees owns the privilege. This is contrary to the Pennsylvania Rules of Professional Conduct. *See* Pa.R.P.C. 5.4(c) ("Professional Independence of a Lawyer) ("A lawyer shall not permit a person who recommends, employs or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."); Pa.R.P.C. 1.7 cmt. 13 ("Conflicts of Interest: Current Clients") ("A lawyer may be paid from a source other than the client… ."). To reach the conclusion of *Riggs* and Justice Wecht, you must accept the idea that the beneficiaries are the "true client" of the attorney hired by the trustee because the beneficiaries are paying for the attorney's services. This formulation ignores the difference between seeking advice on the proper administration of the trust and the impact of the advice on the beneficiaries. Stated another way, while a trustee has the duty to faithfully administer a trust consistent with the trust documents, advice on how to carry out this duty may have different impacts on a beneficiary or multiple beneficiaries depending on the circumstances. Advice on the proper course of administration is rendered to assist the

trustee in exercising her judgment in carrying out the terms of the trust, not to necessarily benefit any or all beneficiaries under the trust. Justice Wecht's position would suggest that only advice that benefits the beneficiaries can be rendered by counsel to the trustee even if the terms of the trust require a more nuanced determination. Contrary to the rule, the beneficiaries would have the authority to direct trustee's counsel's professional judgment in rendering services to the trustee. Pursuant to Pa.R.P.C 5.4(c), an attorney to the trustee is prohibited from rendering advice that is directed or regulated by a party that pays for the services, if not the client, who hired the attorney.

We also challenge Justice Wecht's predicate that by paying a lawyer out of the corpus of the trust, the attorney is spending money owned by the beneficiaries. The beneficiaries do not own the assets in the corpus of the trust. Instead, they are entitled to "an equitable right to derive benefit from them" to the extent set forth in the trust agreement. *Lewis v. Alexander*, 685 F.3d 325, 332 (3d Cir. 2012). Under the Pennsylvania Trust Act, the funds in the corpus are not designated as property of the beneficiaries or otherwise off-limits to the trustee. In fact, the Pennsylvania Trust Act gives the trustee a right to use corpus funds both for the administration of the trust and for reimbursement of expenses incurred in connection therewith. 20 Pa.C.S. §§ 7775, 7769. This is a set-aside for administrative expenses within the corpus. To the extent the beneficiaries "own" funds in the corpus, they are the funds exclusive of those that are necessary to properly administer the trust as deemed reasonably necessary by the trustee in her professional judgment.[4]

---

[4] Of course, any expenses including attorney's fees incurred by the trustee must be reasonable. Whether or not the fees are reasonable is a determination for the Orphans'

The Pennsylvania Trust Act recognizes the reality that there will be administrative expenses incurred by a trustee attendant to the proper administration of the trust. Who would agree to accept the position of trustee if the only way to receive legal advice based on candid communications about the administration (including perceptions of the beneficiaries and/or co-trustees) was to pay for the attorney's services out of personal funds? There is no better way to deter a trustee from seeking legal advice than to require personal payment by the trustee. In many, if not the vast majority of private trusts, the trustee will be an average person who has or had a personal relationship with the trustor.[5] Take for example a farmer who owns property that contains valuable gas rights. He

---

Court and the inquiry is multifaceted. *In re LaRocca's Estate*, 246 A.2d 337, 339 (Pa. 1968) discusses the considerations to be taken into account, many having nothing to do with the disclosure of privileged information. The value of the corpus in relation to the amount of the fees is "very important." *Id.* Pertinently, this comparison is apparently what precipitated the challenge here without the beneficiaries having ever seen a bill for services rendered. Likewise, the court should look at the complexity of the trust, whether the billing attorney drafted the instrument, and the skill and reputation of the attorney. *Id.* Again, proof of these factors has nothing to do with the disclosure of privileged information and may be determinative of the question.

Other factors mentioned in *La Rocca's Estate*, include the detail and amount of the work performed and the character of the services provided (e.g. "communications with client" versus research and preparation of lengthy memoranda). *Id.* These consideration may require an in camera review by the court. The beneficiaries complain that this review amounts to an unacceptably burdensome "in camera expedition" to be avoided by providing them with unredacted attorney invoices. See Wecht Op. at 32. Courts are adept at performing in camera reviews. *See Levy v. Senate of Pa.*, 65 A.3d 361 (Pa. 2013). When required, it is simply a function of a court. We do not view this judicial function as necessarily cumbersome or a reason supporting the destruction of the privilege.

[5] We take no issue with Justice Wecht's statistics supporting the proposition that the majority of the assets held in trust repose with a corporate fiduciary. Wecht Op. at 31 n.36. This, however, does not speak to the number of trusts in total or the number created by individuals of more moderate means who set up trusts to control the disposition of family wealth who choose a family member, lifelong friend or their longstanding sole practitioner professional advisor to serve as trustee.

names his daughter as the trustee of a trust containing these assets and the beneficiaries are her siblings who have varying degrees of acrimonious relationships with each other and the beneficiaries' entitlements are not equal. Why would she agree to accept the position of trustee if she could not candidly discuss her questions and concerns about the proper trust administration with an attorney unless she wrote a check for those services out of her personal checkbook? Nothing in our trust law suggests this outcome and common sense requires a rejection of such a rule.

Before today's opposing opinion supporting affirmance, this Court has been very stingy in allowing exceptions to the attorney-client privilege. Pa.R.P.C 1.6[6] details the

---

[6] Pa.R.P.C. 1.6 provides as follows:

**Rule 1.6. Confidentiality of Information**

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

(b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3.

(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

(1) to prevent reasonably certain death or substantial bodily harm;

(2) to prevent the client from committing a criminal act that the lawyer believes is likely to result in substantial injury to the financial interests or property of another;

(3) to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the

duty to keep information confidential and the limited circumstances when the duty does not apply. The exceptions serve obvious salutary and necessary purposes, for example, to prevent **certain death** or substantial **bodily harm** or to prevent, mitigate or rectify the consequences of a client's crime where the client used the services of the attorney in the

commission of which the lawyer's services are being or had been used;

(4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

(5) to secure legal advice about the lawyer's compliance with these Rules;

(6) to effectuate the sale of a law practice consistent with Rule 1.17;

(7) to detect and resolve conflicts of interest from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client; or,

(8) to comply with other law or court order.

(d) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

(e) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.

Pa.R.P.C. 1.6.

commission of the crime. In contrast to the currently recognized exceptions that are demonstrably weighty when balanced against the sanctity of the privilege,[7] Justice Wecht would adopt a fiduciary exception to the rule that communications with a client are protected based on a precept of trust law that a beneficiary is entitled to inspect the "accounts and vouchers and other documents relating to the trust." RESTATEMENT (SECOND) OF TRUSTS § 173 (1959). Without any attempt at interpretation, Justice Wecht finds that attorney-client privileged communications between the trustee and her counsel fall within the ambit of "relating to the trust." To us, the long-standing recognition of the sanctity of the privilege is implicit in any such disclosure requirement. Moreover, there is certainly nothing in this "right to inspect" that requires the annihilation of the privilege unless the trustee pays for it and it is within this Court's authority to rule that it does not destroy the privilege owned by the trustee regardless of the source of payment of attorney's fees.

There are no weighty considerations here that warrant an exception to the privilege.[8] We agree with Justice Saylor in his Concurring Opinion and Opinion

---

[7] We concede that the exception for the sale of a law practice lacks the obvious exigency of the other exceptions. However, prior to its recognition as an exception, attorneys were unable to safely close their practices and retire from the practice of law unless there was an attorney who also shared the privilege to take over client matters.

[8] The vast majority of cases when the attorney-client privilege is implicated involve a challenge by the beneficiaries to the administration of the trust. In these situations, if a trustee's administration is challenged by the beneficiaries and the trustee relied on the advice of counsel in the administration of the trust, the trustee will likely defend her actions on the basis that she relied on advice of counsel. *See, e.g., Estate of Stetson*, 345 A.2d 679, 688 (Pa. 1975). "While reliance on the advice of counsel does not provide a fiduciary with a blanket immunity in all circumstances, it persuasively rebuts a claim of breach of duty when the decision concerns a matter so dependent on legal expertise[.]" *Id.* (internal citations omitted). By invoking an advice of counsel defense, a trustee would thereby

Supporting Reversal that Justice Wecht's position that a trustee is not entitled to confidential advice from counsel unless he pays for the expense out of his own pocket is an untenable proposition for both the trustee and counsel.[9] When executing their duties, trustees are often faced with complex and difficult choices that can touch upon nearly every area of the law. Questions will inevitably arise in the course of trust administration that will exceed the scope of a trustee's expertise and may present trustees with potentially risky decisions. This Court should not place obstacles to prevent trustees from seeking confidential legal counsel when faced with such circumstances by raising cost as a barrier to responsible administration.

Effective trust administration may require the advice of counsel where the interests of multiple beneficiaries diverge from one another. Beneficiaries may have different rights under the trust document and "have significantly differing needs and tax positions," or, in the case of remainder beneficiaries, they may have "different objectives and risk tolerance." RESTATEMENT (THIRD) OF TRUSTS § 79, cmt. In such circumstances, a trustee should seek advice from legal counsel with respect to the administration of the trust when they are faced with a decision that might benefit one beneficiary but be detrimental to others. Pursuant to a trustee's duty of impartiality, 20 Pa.C.S. § 7773, a trustee is not required to treat all trust beneficiaries equally, but rather "the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." *Id.* cmt.

---

waive the attorney-client privilege and the beneficiaries would be privy to the advice and the basis for it.

[9] Contrary to Justice Saylor's view, we believe that it is this Court's role to resolve the issue presented here, not that of the General Assembly.

In navigating the potentially complex legal landscape of trust administration, a trustee should seek competent legal counsel not only for guidance on what will best serve the trust's purpose, but also to determine the potential risks that a trustee is subject to when making these difficult decisions in the course of trust administration. This is an anticipated cost of administration, payable out of corpus funds with no strings attached, like the loss of attorney-client privilege. The fiduciary exception as crafted by Justice Wecht has the potential to not only discourage trustees from seeking legal advice in the course of trust administration, but could very well discourage service as a trustee altogether.

Justice Mundy joins this concurring opinion and opinion supporting reversal.